IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYLVIA KLATT and | ) | |
| ANDREA ZENNER, | ) | JURY DEMANDED |
| | ) | |
| Plaintiffs, | ) | Case No. 1:18-cv-07414 |
| | ) | |
| v. | ) | Judge Coleman |
| | ) | |
| McHENRY SCHOOL DISTRICT 15, and | ) | Magistrate Judge Fuentes |
| McHENRY SCHOOL DISTRICT 156, | ) | |
| | ) | |
| Defendants. | ) | |

**JOINT MOTION FOR APPROVAL OF
THE SETTLEMENT AGREEMENT AND RELEASE**

**ATTORNEYS FOR PLAINTIFFS:**

Jac A. Cotiguala
**LAW OFFICES OF JAC A. COTIGUALA**
431 S. Dearborn St., Suite 606
Chicago, IL 60605
(312) 939-2100

James B. Zouras
Anna M. Ceragioli
**STEPHAN ZOURAS, LLP**
100 North Riverside Plaza
Suite 2150
Chicago, Illinois 60606
(312) 233-1550

**ATTORNEYS FOR DEFENDANTS:**

Allen Wall
**KLEIN THORPE & JENKINS, LTD.**
20 N. Wacker Dr., Suite 1600
Chicago, IL 60606
(312) 984-6400
*For District 15*

William R. Pokorny
Erin K. Walsh
**FRANCZEK P.C.**
300 S. Wacker Dr., Suite 3400
Chicago, IL 60606
(312) 786-6141
*For District 156*

**INTRODUCTION**

Plaintiffs Sylvia Klatt and Andrea Zenner ("Representative Plaintiffs"), individually and on behalf of 32 Opt-In Plaintiffs ("Opt-In Plaintiffs") (together with Representative Plaintiffs, "Plaintiffs"), allege that Defendants, the Board of Education of McHenry Elementary School District 15 ("District 15") and the Board of Education of McHenry Community High School

1

District 156 ("District 156") (collectively, "Defendants") deprived them and other school bus drivers of minimum and overtime wages due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.* Plaintiffs and Defendants (the "Parties") have agreed to settle all claims asserted by Plaintiffs pertaining to, arising from, or associated with their FLSA and IMWL lawsuit claims.

The Parties, by and through their undersigned counsel, respectfully request that this Court enter an order approving the Parties' proposed settlement agreement because it represents a fair and reasonable resolution of the Parties' bona fide dispute and further state as follows:

I. **FACTUAL AND PROCEDURAL BACKGROUND**

A. **Procedural History**

On November 8, 2018, Representative Plaintiff Sylvia Klatt and Andrea Zenner filed a Class and Collective Action Complaint in the above-captioned matter. (ECF No. 1). Representative Plaintiffs alleged that they and other non-exempt, hourly paid bus drivers were underpaid according to the overtime requirements of the FLSA and IMWL. Specifically, Representative Plaintiffs alleged that Defendants violated the FLSA and IMWL by failing to compensate Plaintiffs for all hours worked in excess of forty hours per workweek. *See* 29 U.S.C. §207(a)(1); 820 ILCS 105/4a.

Representative Plaintiffs sought to represent themselves and similarly situated employees as a collective action under the FLSA and a class action under the IMWL and Federal Rule of Civil Procedure 23. On June 7, 2019, this case was conditionally certified as a collective action under Section 216(b) of the FLSA, and the Court granted facilitation of notice. (ECF No. 49). Per that order, notice was issued to all bus drivers employed as non-exempt, hourly-compensated employees in the State of Illinois during the three years preceding the date of notice. Ultimately,

32 individuals opted into the lawsuit. All the Opt-In Plaintiffs signed a consent form designating the Representative Plaintiffs and Plaintiffs' counsel as their agents to make all decisions concerning the above-captioned matter.

Defendants denied and continue to deny any liability, wrongdoing, or legal violations of any kind related to the claims and contentions asserted by Plaintiffs. Defendants maintained that all employees were and always have been properly compensated and that no overtime pay of any kind is owed to them. Defendants have also disputed that a class or collective action is appropriate. Nonetheless, Defendants agreed to settle the claims asserted in this lawsuit on the terms and conditions set forth in the Settlement Agreement to avoid the burden and expense of continued litigation.

### B. Discovery Completed

The Parties engaged in extensive discovery. District 15 produced payroll and other records requested by Plaintiffs, and Plaintiffs took depositions of several defense witnesses. Plaintiffs' counsel has conducted investigation and case analysis including: (a) interviews and other communications with Representative Plaintiffs and the 32 Opt-In Plaintiffs; (b) a review of payroll records identifying, among other items, dates of employment and pay rates for Representative and Opt-In Plaintiffs; (c) intense data analysis to determine damages owed; and (d) an investigation regarding the applicable law as applied to the facts discovered regarding the alleged claims and defenses. Declaration of Anna Ceragioli ("Ceragioli Decl.") ¶ 7, attached as Exhibit A.

### C. Settlement Negotiations

Over the next few months, the Parties engaged in comprehensive settlement negotiations via phone and email correspondence. Ceragioli Decl. ¶ 8. The Parties ultimately reached an

agreement on the settlement amount and the structure of the settlement. *Id.* Over the next few weeks, the Parties negotiated the remaining terms of the settlement, which were memorialized in the formal Settlement Agreement executed in full on September 22, 2020. *Id.* This settlement provides for substantial monetary relief for the Representative Plaintiffs and Opt-In Plaintiffs. *Id.* ¶ 9.

While the Representative Plaintiffs believed their liability case was strong, they recognized that a complete victory on every aspect of their claim, including the measure of damages, was far from certain. The Parties also took into account the costs and risks associated with further litigation, and the benefits, certainties, and judicial economies associated with resolving a complex case before dispositive motion practice and possible trial. As a result, the Parties negotiated a global resolution of this dispute. *See* Settlement Agreement and Release of Claims ("Settlement Agreement"), attached as Exhibit B.

## II.  SUMMARY OF THE SETTLEMENT TERMS

The terms of this settlement are contained in the Settlement Agreement. Defendants separately entered into a Settlement Contribution Agreement, as noted in Section 7 of the Settlement Agreement. There are no undisclosed side agreements between the Plaintiffs and Defendants. Ceragioli Decl. ¶ 10.

### A.  The Settlement Payment

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties agreed to the Settlement Payment set forth in the attached Settlement Agreement. Settlement Agreement ¶ 6. The Settlement Payment covers: (1) all attorneys' fees and costs in connection with Plaintiffs' counsel's representation of Plaintiffs, including all attorneys' fees and costs that may arise in the future in connection with the

Settlement Agreement, including, without limitation, seeking Court approval of the Settlement Agreement; (2) all payments to Representative Plaintiffs and Opt-In Plaintiffs; and (3) a service payment to the Representative Plaintiff Sylvia Klatt ("Service Payment"). *Id.*

### B. Settlement Collective Members

Plaintiffs eligible to receive a settlement payment are two Representative Plaintiffs and the 32 Opt-In Plaintiffs entitled to damages: Sylvia Klatt, Andrea Zenner, Lori Barnes, Joann Behan, Angela Bove, Jennifer Cassan, Debra Chaples, Brian Diederich, Cynthia Duckworth, Donna Eskridge, Julie Fast, Julie Flores, Donna Freedenberg, Thomas Giurlani, Jennifer Herman, Michael Horvath, Vicki Johnson, Jeneane Kehl, Laura Langguth, John Lindsay, Charles Lindwall, Megan Lowe, Donna Mulick, Sue Ofenlock, Deborah Pahl, Dennis Palvs, Tyler Roman, Eugene Silvers, David Slepcevich, Brenda Tonyan, Jennie Weberski, Linda Weinfurter, George Wilkinson, and Samantha Zurawski. *See* Settlement Agreement.

### C. Releases

The Settlement Agreement provides that, upon entry of an order approving the settlement by the Court, the Representative Plaintiffs and Opt-In Plaintiffs will agree to "irrevocably and unconditionally release and forever until the end of time discharge and acquit Defendants and Defendants' Affiliates from all claims that were asserted in the Litigation, including but not limited to all claims for unpaid overtime wages, liquidated damages, treble damages, or other sums due as a result of any alleged failure to pay wages in accordance with the Fair Labor Standards Act or Illinois Minimum Wage Law (hereinafter referred to as the "Claims"), earned or payable from November 8, 2015 through December 31, 2019." . Settlement Agreement. ¶ 10.

### D. Calculation and Distribution of the Settlement Payment

Within fourteen (14) days following the Court's approval of the Settlement Agreement,

District 15 shall distribute the Settlement Payment in accordance with the Settlement Agreement ¶ 6(a) to each of the Plaintiffs who has either a current IRS Form W-4 with Defendants or has submitted a new one and to their attorneys upon submission of an IRS Form W-9. The distribution of the Settlement Payment designated for Plaintiffs is based on employee payroll data produced by Defendants and is allocated to each of the Plaintiffs based on individual calculations of each Plaintiffs' overtime damages, liquidated damages, and statutory interest. Each Plaintiff's total damages was divided into two payments: (1) one payment subject to reporting on IRS Form W-2 and (2) one payment subject to reporting on IRS Form 1099. Settlement Agreement ¶ 6(a). The Settlement Payment set forth in Settlement Agreement ¶ 6(a) is allocated to each of the individual Plaintiffs in accordance with Exhibit B-1.

   E. **Service Payment to Sylvia Klatt**

The Settlement Payment includes the distribution of a Service Payment to Representative Plaintiff Sylvia Klatt in the amount of $10,000, as payment for her efforts on behalf of the Opt-In Plaintiffs, including participating in discovery, participating in the settlement conferences, and assisting Plaintiffs' counsel with the prosecution of the lawsuit. Settlement Agreement ¶ 6.

   F. **Attorneys' Fees and Litigation Costs**

The Parties negotiated and agreed to an award of attorneys' fees and costs in the gross amount of $475,000.00 for work performed in connection with this matter, as well as reasonable out-of-pocket litigation costs expended. Settlement Agreement ¶ 6. Plaintiffs represent that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Plaintiffs' counsel, their hourly rates, the risks undertaken, and the results achieved. Defendants take no position regarding the appropriateness of this fee award.

**III.     STANDARD GOVERNING MOTIONS TO APPROVE FLSA SETTLEMENTS**

In the Seventh Circuit, settlements of FLSA claims must be approved by a Court of competent jurisdiction. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355. When reviewing a proposed FLSA settlement, the district court must scrutinize the settlement for fairness and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id*. at 1353, 1355. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

When FLSA cases are settled on a collective basis, courts in this district have held that a one-step settlement approval process is appropriate. *See Bainter v. Akram Investments, LLC*, No. 17-cv-7064, 2018 WL 4943884, at *2 (N.D. Ill. Oct. 9, 2018); *Briggs v. PNC Fin. Servs. Group, Inc.*, No. 15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

**IV.     APPROVAL OF THE SETTLEMENT IS APPROPRIATE.**

The settlement reached by the Parties represents a fair, just, and reasonable resolution of the claims alleged by Plaintiffs under the FLSA and IMWL and any remaining disputes between the Parties. The agreement reached is the result of extensive negotiations between the Parties to resolve this matter. The Settlement Amount agreed upon bears a reasonable and fair relationship to the amounts alleged by the Representative Plaintiffs and Opt-In Plaintiffs, and also takes into account the specific risks and uncertainties associated with this litigation. The Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients. Significantly, the Settlement Agreement provided for monetary relief for all Plaintiffs, including each of the 32 Opt-In Plaintiffs, each of whom has signed the Settlement Agreement affirming his or her assent to it.

### A. *Bona Fide* Disputes Exist.

The settlement of the instant action involves a *bona fide* dispute. Plaintiffs maintain that Defendants operate a policy and practice by which Plaintiffs were paid per-route rather than per-hour, which resulted in Defendants' failure to pay Plaintiffs overtime for all hours worked over 40 hours in a workweek in violation of the FLSA and Illinois law. On liability, Plaintiffs would have to overcome Defendants' numerous legal and factual defenses, including, but not limited to the following:

1) Defendants complied with all provisions of the FLSA and Illinois wage law at all times; and

2) To the extent Plaintiffs could prove that Defendants did not comply with the FLSA, Defendants maintain that the violation was not intentional.

Few courts have addressed the precise issue regarding whether Defendants' "per-route basis" pay scheme is permissible under the FLSA. *See Perez v. Super Maid*, 55 F. Supp 3d 1065, 1079 (N.D. Ill. July 14, 2014) (finding a pay scheme where defendants pay a flat fee per site regardless of the number of hours worked, do not pay for travel time between sites, and

8

sometimes require six-day workweeks violates FLSA). Additionally, as in any complex action, the Plaintiffs generally face uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

In addition, a trial on the merits would involve significant risks for Plaintiffs as to damages. *Bona fide* disputes exist as to whether the Representative Plaintiffs and the Opt-In Plaintiffs could establish the hours of overtime they worked and the weeks in which they worked overtime.

### B. The Settlement Is Fair and Reasonable.

In determining whether a settlement is fair and reasonable, courts have considered non-exclusive factors such as: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Plaintiffs to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the action through the trial; (7) the ability of the Defendants to withstand a larger judgment; (8) the range of reasonableness of the Settlement Payment in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Payment in light of all the risks of litigation." *Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011).

The Parties' settlement is fair and reasonable and meets all applicable factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, likely duration of the litigation, and the range of reasonableness of the Settlement Payment in light of the best possible recovery. *See* Settlement Agreement ¶ 2.

Moreover, the settlement is appropriate at this stage of the proceedings. As set forth

9

above, the Parties engaged in extensive discovery and litigation, which aided the parties in efficiently identifying and assessing the disputed legal and factual issues here. The Parties also engaged in a substantial investigation, which included remaining abreast of any changes in this ever-evolving and highly-nuanced area of the law. Plainly, the Parties had more than sufficient information to assess the risks of liability and damages.

Additionally, the settlement is well within the range of possible recovery. As in all wage and hour claims, particularly in the collective action context, the nature and amount of recoverable damages was uncertain. Even if a trier of fact ultimately found liability, a range of possible damages existed depending on factors including, but not limited to, the Parties and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable statute of limitations, and Defendants' knowledge, willfulness and good faith. Taking these considerations into mind, the amount of the settlement is appropriate in relation to the potential recovery and risks.

The settlement is based on the number of weeks worked by each individual Opt-In Plaintiff during the class period and accounts for all workweeks at issue. The amount includes an additional $10,000.00 Service Payment to the Representative Plaintiff Sylvia Klatt who personally devoted considerable time and expense to the prosecution of the lawsuit, including but not limited to providing information during initial case investigation, providing declarations, participating in written discovery, and participating in the settlement conferences.

Based on the aforementioned factors, the Parties conclude that a settlement on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, in the best interests of the Parties, and not worth the costs and risks associated with a trial. As part of the Settlement

Payment, the Parties have agreed that Plaintiff's counsel will receive $475,000.00 in attorneys' fees and recoverable costs, a sum Plaintiffs' counsel represents is consistent with the attorney-client agreement executed by the Representative Plaintiffs. Defendants have no objection to the fees and costs. In sum, the Settlement Agreement constitutes a fair and reasonable settlement of all claims consistent with abundant precedent, and the interests of judicial economy support approval of the Settlement Agreement.

## CONCLUSION

For the reasons set forth above, the Parties respectfully request an order: (1) approving the Settlement Agreement, releasing of each of the 34 individual Plaintiffs' Claims, and authorizing the payments to eligible Plaintiffs, including the service payments to Representative Plaintiff Sylvia Klatt, and the payment of attorneys' fees and costs set forth therein; (2) dismissing the action in its entirety without prejudice as to each of the 32 Opt-In Plaintiffs and 2 Representative Plaintiffs; and (3) retaining jurisdiction only for the purpose of enforcing payment of the Settlement Payment until October 30, 2020; and (4) providing that the dismissal will convert to a dismissal with prejudice without further order of the Court if no party files a motion to enforce the Settlement Agreement or to extend the Court's jurisdiction over this case beyond October 30, 2020. *See* Proposed Approval Order and Final Judgment attached hereto as Exhibit C.

Dated: September 24, 2020          Respectfully Submitted,

*/s/ Anna M. Ceragioli*

Ryan F. Stephan
James B. Zouras
Anna M. Ceragioli
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150

Chicago, IL 60606
(312) 233-1550
(312) 233-1560 (fax)
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aceragioli@stephanzouras.com


/s/ Allen Wall      **TTORNEYS FOR PLAINTIFFS**


Allen Wall
**KLEIN THORPE & JENKINS, LTD.**
20 N. Wacker Dr., Suite 1600
Chicago, IL 60606
(312) 984-6400

**ATTORNEY FOR DEFENDANT DIST. 15**


/s/ William R. Pokorny


William R. Pokorny
Erin K. Walsh
**FRANCZEK P.C.**
300 S. Wacker Dr., Suite 3400
Chicago, IL 60606
(312) 786-6141
*For District 156*

**ATTORNEYS FOR DEFENDANT DIST. 156**

12

**CERTIFICATE OF SERVICE**

  I, the attorney, hereby certify that on September 24, 2020, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

                 */s/ Anna M. Ceragioli*